IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JASON PICK,

                    Plaintiff,

          v.                                                           OPINION and ORDER

FRANK BISIGNANO,[1]                                                     24-cv-573-jdp
Commissioner of the Social Security Administration,

                    Defendant.

---

Plaintiff Jason Pick seeks judicial review of a final decision of defendant Frank Bisignano, Commissioner of the Social Security Administration, finding that Pick was not disabled under the meaning of the Social Security Act. Pick asserts numerous objections to administrative law judge (ALJ) Gary Freyberg's decision, including the ALJ's handling of the medical opinions, his evaluation of Pick's subjective symptoms, and his explanation of the limitations he included in Pick's residual functional capacity (RFC) assessment.

The court concludes that the ALJ satisfied his burden in most respects to explain why he believed the evidence supported his conclusion. But one issue requires remand. The court concludes that the ALJ failed to explain how he considered Pick's chronic headaches in determining Pick's RFC.

---

[1] The court has updated the caption in accordance with Federal Rule of Civil Procedure 25(d).

BACKGROUND

Pick applied for disability benefits, alleging disability beginning April 23, 2021. R. 216.[2] The ALJ found that Pick suffered from multiple severe impairments: degenerative disc disease, chronic pain syndrome, failed back syndrome, migraine headaches, mild right knee degenerative joint disease, anxiety disorder, depressive disorder, and attention deficit hyperactivity disorder. R. 19. The ALJ found that Pick had the residual functional capacity (RFC) to perform light work, with the following additional restrictions:

- He can never climb ladders, ropes, or scaffolds.

- He can occasionally crouch, kneel, crawl, stoop, and climb ramps and stairs.

- He must avoid dangerous moving machinery and unprotected heights.

- He is limited to simple instructions and simple, routine, tasks.

- He is limited to low stress jobs with no production rate or quotas.

R. 21–22. Relying on the testimony of a vocational expert, the ALJ found that Pick was not disabled because he could perform jobs that exist in significant numbers in the national economy, such as housekeeping cleaner, laundry worker, and hand packager. R. 29.

Pick now appeals to this court. On appeal, the court's role is to review the ALJ's decision for legal errors and to determine whether the decision is supported by substantial evidence. *See Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). The substantial evidence standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. But the ALJ's decision must identify the relevant evidence and

---

[2] Record cites are to the administrative transcript located at Dkt. 5. Pick initially alleged disability beginning October 14, 2018, R. 195, but he later amended his onset date to April 23, 2021.

build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

## ANALYSIS

Pick's objections to the ALJ's decision fall into three categories: (1) medical opinions; (2) subjective symptoms; and (3) aspects of the RFC assessment.

### A. Medical opinions

Five medical professionals provided opinions on Pick's physical and mental health: (1) Margaret Punt, Pick's treating physician; (2) Pat Chan, a stage-agency physician who conducted a record review in 2021; (3) Mina Khorshidi, a stage-agency physician who conducted a record review in 2022; (4) Foster Hays, Pick's treating psychiatrist; (4) Catherine Bard, a state-agency psychologist who conducted a record review in 2021; and (5) John Warren, a state-agency psychologist who conducted a record review in 2022. The ALJ mostly adopted the opinions of the state-agency consultants' opinions in determining Pick's RFC. He mostly rejected Punt and Hays's opinions.

Pick contends that the ALJ failed to adequately explain why he rejected Punt's and Hays's opinions. When considering how much weight to give a medical opinion, the ALJ must explain how well supported the opinion is and how consistent it is with other evidence in the record. 20 C.F.R. § 404.920c(a); *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022).

#### 1. Punt

Punt offered two opinions about Pick's physical and mental health, both dated July 2023. In an alcohol and drug questionnaire, she wrote that Pick was undergoing daily methadone treatment for opioid addiction. R. 634. She noted that drug addiction was not

3

Pick's only impairment, but that his other impairments were not disabling alone. *Id.* The ALJ found this opinion "persuasive for the opinion that the claimant's other impairments [are] not disabling, as this is consistent with and supported by the substantial evidence. However, the persuasive value is limited by the absence of an explanation or analysis." R. 26.

Punt also completed a general functional questionnaire, finding, among other things, that Pick could lift 20 pounds occasionally and 10 pounds frequently, that Pick's pain would "constantly" interfere with his attention and concentration, that Pick was unable to sit more than four hours or stand more than two hours during an eight-hour work day, and that Pick would likely be absent from work more than four days per month. R. 636–40. The ALJ found Punt's assessment of Pick's lifting ability to be consistent with the stage agency consultants' opinions and the other medical evidence. R. 26. But he did not adopt Punt's other opinions, because Punt had not explained them and because they were inconsistent with the treatment notes, the alcohol and drug questionnaire that Punt had completed, and the opinions of the state agency consultants. R. 27–28.

The court sees no reversible error in the ALJ's rejection of Punt's opinion. An ALJ may reject a medical opinion that is inconsistent with the physician's own findings, and here, the ALJ accurately noted inconsistencies with Punt's treatment notes and with the alcohol and drug questionnaire that Punt completed around the same time. *Pavlicek v. Saul*, 994 F.3d 777 (7th Cir. 2021). The ALJ observed that Punt's notes contained no record of problems with concentration or attention, contradicting her assertion that Pick's pain would "constantly" interfere with his concentration and attention at work. R. 28. Pick says that the lack of any observed difficulties with attention or concentration during brief medical visits is not inconsistent with difficulty concentrating during full-time work. But Pick ignores the ALJ's

point: Punt said that Pick would experience not just some difficulties concentrating, but *constant* difficulties. It is not illogical for the ALJ to assume that such a severe impairment would appear somewhere in Punt's treatment records.

The ALJ also found that Punt's opinion that Pick suffered from severe functional limitations was inconsistent with the alcohol and drug questionnaire that she had completed the same month, in which she wrote that Pick's non-addiction-related impairments were not disabling on their own. R. 634. Pick says that the ALJ should not have relied on this purported inconsistency, for two reasons. First, he argues that the ALJ should have ignored Punt's statement that Pick's other impairments were not disabling on their own, because whether someone is disabled is a question for the ALJ, not the medical sources. Dkt. 8, at 18 (citing 20 C.F.R. § 416.920c). But Pick cites no authority holding that an ALJ may not consider a medical source's statement that a claimant's condition is not disabling to evaluate the internal consistency of a medical opinion. Nor do the regulations support that view: ALJs are instructed to evaluate the consistency of a medical opinion in light of the entire record, which implies that they can consider a medical source's opinion that a claimant is not disabled. 20 C.F.R. § 416.920c.

Second, Pick points out that less than a week after the ALJ issued his opinion, Punt submitted an amended alcohol and drug questionnaire opining that Punt's non-alcohol related conditions *were* independently disabling. R. 35. Punt wrote in an explanatory note, "misread question: Yes, he has other disabling conditions including chronic pain, MDD/GAD." *Id.* Pick cites no authority that the commissioner would have been required to accept Punt's explanation for changing her opinion. In any event, the inconsistency between Punt's opinion

and her treatment notes is reason enough to affirm the ALJ's rejection of Punt's opinion even without considering the alcohol and drug questionnaire.

### 2. Hays

Pick's treating psychiatrist Hays completed a mental impairment questionnaire in July 2023, finding that Pick would have marked limitations in his ability to perform and sustain work duties without unreasonable breaks, extreme difficulties in getting along with others, accepting criticism, and asking for assistance, marked difficulties in following work rules and adapting to the demands of the workplace, and that Pick would be absent from work about two days per month. R. 641–44. The ALJ found Hays's opinion unpersuasive because it lacked explanation, was inconsistent with Pick's mental status examinations, and was inconsistent with Pick's reported activities, including his ability to complete technical college in 2021. R. 27.

As with Punt, the court concludes that the ALJ properly rejected Hays's opinion on consistency grounds. The ALJ cited numerous mental status examinations in which Pick's behavior, attention, and thought processes were observed to be normal, which appeared to contradict Hays's findings of extreme limitations in mental functioning. R. 27. Pick accuses the ALJ of ignoring treatment records with abnormal mental health findings. *See, e.g.,* R. 759, 838, 1198 ("mild blunt[ed]" affect); R. 534 ("tearful" when discussing grief over his mother's death); R. 838 (reporting "not good" mood, lack of energy and motivation); R. 445 (reporting difficulties concentrating due to pain); R. 415 (reporting "anxiety managed by a psychiatrist"); R. 591 (reporting anxiety due to fighting with his girlfriend); R. 758, 1197 (reporting difficulties controlling anger). It's true that the ALJ did not discuss all these findings, but he wasn't required to do so: all the ALJ has to do is provide an "adequate discussion" of the issues and not "ignore[] an entire line of evidence that supports a finding of disability." *Deborah M.*

6

*v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021). The ALJ acknowledged Pick's difficulties concentrating and managing stress and incorporated those into his RFC. The scattered abnormal findings within the record don't undermine the ALJ's basic point, which is that Pick's mental status examinations don't support the extreme functional limitations found by Hays.

The ALJ also adequately explained why he found Hays's opinion to be inconsistent with Pick's reported activities, including completing technical college in 2021 and reading scientific articles as a hobby. Pick argues that his having completed technical college shouldn't have figured into the ALJ's analysis, for two reasons. First, he points out that he graduated in May 2021, just one month after his alleged onset date of disability. But that doesn't matter for the ALJ's evaluation of Hays's opinion, because Hays said that his views about Pick's limitations applied at least back to March 2020. R. 642. Second, Pick argues that his technical college program was mostly remote due to the COVID-19 pandemic, so it is a poor proxy for sustaining full-time employment. That's a strawman. The ALJ didn't conclude that Pick could sustain full-time work because he was able to complete his technical college degree; he simply observed that Pick's completing his degree was inconsistent with the marked to extreme limitations that Hays found in Pick's ability to concentrate, adapt, and interact with others. The ALJ's reasons for rejecting Hays's opinion were logical and supported by the record, so his decision on that issue will be affirmed.

## B. Subjective symptoms

Pick next asserts that the ALJ wrongly assessed his subjective complaints. Social Security regulations instruct ALJs to evaluate the credibility of a claimant's reported symptoms by considering a variety of factors, including treatment history, daily activities, and consistency with a claimant's self-report with the rest of the evidence. 20 C.F.R. § 404.1529(c)(2). Courts

review an ALJ's evaluation of the claimant's testimony deferentially, overturning it only if it is patently wrong and lacks any explanation or support. *Deborah M*, 994 F.3d at 789; *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008).

Pick testified to a variety of symptoms, including back pain, frequent migraine headaches, anxiety with panic attacks, and depression. He doesn't say in his brief what specific complaints that he believes the ALJ should have credited, but his arguments focus on his physical symptoms, so the court will do the same.

Pick's physical symptoms stem from a spinal injury in 2009 and a motor vehicle accident in 2018. He testified that he "constantly" has knots in his lower back and "it hurts all the time." R. 52. Pick also has bulging discs in his neck "that cause headaches pretty much all day long." *Id.* He said that he gets migraine headaches two to three times a week; when he gets one, he is unable to do anything for the rest of the day. R. 48. To treat his back and neck pain, Pick has undergone two spinal fusion surgeries, completed physical therapy, and received pain-management injections. He says that, since the 2018 accident, he has used a cane to get around about half the time. R. 52. He takes medication to manage his migraine headaches.

Pick makes three arguments regarding his subjective symptoms, none of which is persuasive. First, he asserts that the ALJ wrongly assumed that he was not disabled because his condition had improved. Pick relies on the ALJ's statement that "although [Pick] has had consistent reports of pain and significant treatment for his back, he has reported improvements with these treatments and is maintained on medications." R. 24. But, in context, it's clear that the ALJ didn't discount Pick's reported symptoms because his condition had improved; he discounted them because the medical evidence contradicted Pick's testimony. The ALJ observed that none of Pick's medical records referred to him using a cane or other assistive

device, contradicting Pick's assertion that he had used a cane at least half the time since 2018. R. 24–25. The ALJ also cited treatment notes from 2022 and 2023, in which Pick told providers that he had migraines only about every two weeks and that his headaches were "not too bad." R. 850. Pick doesn't dispute that the treatment notes the ALJ cited are inconsistent with his testimony. An ALJ can properly reject a claimant's testimony if it is inconsistent with the medical record. *See Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018). The court concludes that the ALJ provided ample evidence in the record to support his assessment that Pick's testimony was inconsistent.

Second, Pick contends that the ALJ equated his activities of daily living with an ability to do full-time work. The court of appeals has long rejected the position that an individual can work full-time simply because he can complete daily tasks. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer.") But an ALJ may consider a claimant's activities to assess the credibility of her statements concerning the intensity, persistence, or limiting effects of her symptoms. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). That's what the ALJ did here. The ALJ noted that Pick was able to do daily chores, including cooking, laundry, dishes, sweeping, driving, and shopping. R. 26. He drove his girlfriend's daughter to school and drove an hour each day to a methadone clinic. He walks his dog daily and spends about an hour and a half each day looking at astronomy pictures and reading scientific articles on the computer. R. 47–52. Based on these activities, the ALJ concluded that Pick's headaches and back pain

9

were not as debilitating as Pick represented. The ALJ's explanation was logical, so the court may not disturb it.

Pick points out that the ALJ relied on some activities that were in his medical record only because those activities increased his pain. The ALJ noted that records from Pick's doctor visits reflected him hitting golf balls and trimming trees and bushes with a chain saw. R. 25. Both of those activities came from a June 2023 physical therapy note, in which the therapist wrote: "Patient tried hitting a few golf balls yesterday which has significantly increased his pain . . . He assisted in yard cleaning with trimming of trees and cutting down of bushes with use of chainsaw, when he did 1 day he had significant increase in neck and headache pain." R. 844. The court agrees with Pick that these activities, which Pick appears to have done only once and which exacerbated his pain, don't appear to be inconsistent with Pick's subjective account of his symptoms. But an ALJ's analysis of a claimant's subjective symptoms must be upheld unless it is "patently wrong," *see, e.g., Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015), so it is enough if only some of the ALJ's reasons are supported by substantial evidence. *See Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013) (upholding ALJ's credibility assessment even though some of his reasoning was not supported by the record). The court has already determined that at least some of the ALJ's reasons are supported by the evidence, so one dubious reason does not require remand.

Third, Pick says that the ALJ didn't consider his lengthy treatment history, including two spine surgeries, strong pain medications, physical therapy, visits to spine specialists and pain management doctors, and multiple spine injections. This is simply not accurate. The ALJ described Pick's treatment history at length and credited it by limiting Pick to light work with postural limitations. Accepting Pick's argument that the ALJ should have found additional

10

limitations based on his treatment history would require the court to reweigh the evidence, which the court may not do. *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022).

## C. RFC assessment

Pick challenges four aspects of the ALJ's RFC assessment. First, he says that the ALJ failed to include specific limitations for Pick's headaches. Second, he says that the ALJ did not explain how he accounted for Pick's degenerative disc disease. Third, he says that the ALJ did not incorporate any functional limitations to account for Pick's moderate limitation in concentration, persistence, and pace. Fourth, he says that the ALJ did not consider the interrelationship of his physical and mental conditions in crafting the RFC.

Pick's second, third, and fourth arguments are easily resolved. Although Pick says that the ALJ failed to account for his degenerative disc disease, his moderate limits in concentration, persistence, and pace, and the combined effects of his impairments, he doesn't actually identify any evidence of limitations that the ALJ ignored. *See Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (a claimant is not entitled to a remand if she does not "identify medical evidence that would justify further restrictions"). Pick says that his subjective testimony and his treating providers' opinions justified greater restrictions than what the ALJ found, but the ALJ addressed that evidence at length, as discussed above. Pick also pointed to psychological tests in the record showing that his mental health and coping skills were negatively affecting his ability to manage his pain. R. 539–41. But this amounts to a general observation that Pick's mental health contributes to his perception of pain; Pick identifies no corresponding restriction that could be incorporated into the RFC assessment. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) (the claimant bears the burden of proving the restrictions that should be incorporated into his RFC).

11

That leaves Pick's argument that the ALJ failed to include restrictions for his headaches. Pick acknowledges that the ALJ discussed his migraine headaches in his decision, but he says that the ALJ failed to explain how he accounted for Pick's headaches in the RFC. The court agrees. The ALJ wrote in his decision that Pick had been seen in the emergency room for dizziness from migraines, that he was experiencing at least biweekly migraines for several months during 2022 and 2023, and that he had reported near-constant headaches (not migraines) due to bilateral occipital neuralgia. R. 24. But the ALJ discussed this evidence only in the context of summarizing the medical evidence, and a summary "isn't a substitute for analysis." *Plemon v. Kijakazi*, No. 21-cv-148-jdp, 2022 WL 842914, at *3 (W.D. Wis. Mar. 22, 2022). The ALJ cited Pick's comment that his migraines were "not too bad" in June 2023. But the ALJ did not completely reject Pick's assertion that from time to time he suffered serious migraines. The ALJ did not say what functional limitations, if any, he found based on Pick's headaches, which precludes meaningful review of how the ALJ handled this issue.

The court is persuaded that the ALJ's error on the headache issue is not harmless. Pick testified that when he experiences a migraine, he is "pretty much done" for the rest of the day, which suggests that he might not be able to work on days when he experiences a migraine. R. 48. (The ALJ took issue with other parts of Pick's subjective testimony, but he did not discuss that part.) If the ALJ credited Pick's testimony about the limiting effects of his migraines, and if he credited the medical evidence that Pick experienced at least one migraine every two weeks, then that could justify an RFC restriction that Pick would be absent from work for at least two days each month. The vocational expert testified that such a restriction would have been work preclusive. R. 62. There is evidence in the record suggesting that Pick's migraines would not have required him to be absent from work that frequently. *See* R. 850

12

(neurologist note explaining that "[w]hen he does have a migraine, it is easily alleviated with sumatriptan"). But the ALJ didn't discuss that evidence, so it is impossible to know what the ALJ thought of it.

The commissioner resists remand on the headache issue for two reasons, neither of which is persuasive. First, the commissioner argues that the ALJ explained why he rejected Pick's testimony that he experienced headaches nearly every day. That's true: the ALJ said that Pick's testimony about the frequency of his headaches was inconsistent with treatment notes in which Pick reported migraines only every other week. R. 25. But even a migraine every other week could have been work preclusive if it was so intense that Pick would have had to be absent from work. The ALJ didn't address the evidence about the intensity of Pick's migraines, so his analysis of the headache issue is incomplete.

Second, the commissioner argues that the ALJ does not have to match each restriction in the RFC to a particular impairment. That argument misses the point. The ALJ does not have to provide a separate restriction for each impairment, but the RFC determination as a whole must account for all the claimant's impairments. *Murphy v. Colvin*, 759 F.3d 811, 820 (7th Cir. 2014). Here, the commissioner says that any of the restrictions the ALJ imposed—no exposure to heights or dangerous machinery, no climbing ladders, only occasionally climbing ramps and stairs, only mentally undemanding work, and no pace work—could have accommodated Pick's migraines. But that's the problem. The commissioner, like the court, is left theorizing as to how the ALJ might have accommodated Pick's migraines, because the ALJ did not explain. The ALJ has not met his burden to draw a logical bridge between the medical evidence of Pick's headaches and his determination of Pick's RFC, so the court will remand this case to the commissioner for reconsideration of the headache issue.

ORDER

IT IS ORDERED that that the decision denying disability benefits to plaintiff Jason Pick is REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

Entered March 27, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

14